# CRIMINAL COMPLAINT

ORIGINAL

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>JAKE WALTER MANKINS | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>**09-1910M** |

Complaint for violation of Title 18, United States Code, Sections 111(a)(1); 111(a)(2).

| NAME OF MAGISTRATE JUDGE<br>HON. FERNANDO M. OLGUIN | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Santa Maria, CA |
|---|---|---|

| DATE OF OFFENSE<br><br>August 21, 2009 | PLACE OF OFFENSE<br><br>Santa Barbara<br>County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

On August 21, 2009, JAKE WALTER MANKINS did forcibly assault, intimidate and interfere with a federal officer as designated by Title 18, United States Code, Section 1114, in violation of Title 18, United States Code, Sections 111(a)(1) and 111(a)(2).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:
    See attached affidavit which is incorporated as part of this Complaint

MATERIAL WITNESSES IN RELATION TO THIS CHARGE:

| Being duly sworn, I declare that the<br>foregoing is true and correct to the<br>best of my knowledge. | SIGNATURE OF COMPLAINANT<br>DANIEL F. BRIOT |
|---|---|
| | OFFICIAL TITLE<br>Special Agent - USDA FOREST SERVICE |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE | DATE<br>August 24, 2009 |
|---|---|

AUSA J. Lana Morton-Owens        REC: WARRANT

## AFFIDAVIT

1.    I, Daniel Briot, state that I am a Special Agent
(SA) with the United States Forest Service (USFS) in San
Bernardino, CA and have been so since September 30, 2007.
On June 25, 2008 I successfully completed the Criminal
Investigator Training Program at the Federal Law
Enforcement Training Center (FLETC) in Glynco, Georgia.
While attending FLETC I received training in basic law
enforcement skills to include;  firearms, defensive
tactics, driver's training and various aspects of the
United States Constitution and its associated legal system.
My duties require me to conduct investigations of
violations of Federal statues and regulations as they
relate to Federal lands administered by the USFS.

2.    Prior to my present position I worked as the
Chief Ranger for the United States Bureau of Land
Management (BLM) in Barstow, California.  My duties
required me to review case files of subordinates, liaisons
with the United States Attorney's Office and supervise
other law enforcement personnel in the performance of their
duties.  I have also worked as a uniformed Federal Law
Enforcement Officer (LEO) with both the BLM and the USFS
for approximately 3½ years.

**PROBABLE CASE STATEMENT**

3.    On August 22, 2009 I received a phone call from
USFS SA Donna Deaton regarding an assault of a National
Park Service LEO, later identified as Eric Oaks.   LEO Oaks,
being a uniformed Federal Law Enforcement Officer, is a
designated person under Title 18 United States Code Sec.
1114 and was engaged in official duties when he was
forcibly assaulted.   Based on this information I contacted
USFS Patrol Commander Rita Wears who informed me that the
incident occurred at the La Brea Fire incident base camp
located in the city of Santa Maria within the County of
Santa Barbara in the State of California.   The base camp
was temporarily established to assist in the fighting of
the La Brea fires.

4.    Based on my conversation with Officer Cockrum, I
learned that LEO Oaks is a federal officer assigned to
patrol the base camp, within Preisker Park in Santa Maria,
which was designated as federal property during this time.

5.    On August 22, 2009 LEO Oaks provided me with a
written statement of the events surrounding the assault
which contained the following:

        a.    On August 21, 2009 at approximately 11:45
p.m., LEO Oaks was assigned to conduct uniformed foot
patrols within the boundaries of an area under contracted

land use agreement between the United States Forest Service and the City of Santa Maria.  The area was a Santa Maria City Park named Preisker Park, located off Preisker Rd inside the City limits of Santa Maria CA, in the County of Santa Barbara.  The park was being used by fire personnel assigned to the Le Brea Fire who were occupying the camp 24 hours of the day.  Preisker Park was closed to the public and the perimeter of the park was taped off and numerous barricades were in place posting the closure.  His official duties included guarding and protecting firefighters, fire equipment, and personal property.

b.    While on foot patrol, wearing the National Park Service Law Enforcement Uniform, LEO Oaks saw a man, later identified in paragraph 5(g) as Jake MANKINS, walking from the center of the fire camp toward Preisker Lane (road way bordering the posted perimeter of fire camp).  As this area was off limits to the public, LEO Oaks stated "Hey" in a moderate tone to attempt to determine whether MANKINS belonged in the camp.  MANKINS ignored LEO Oaks' attempt and kept walking.  LEO Oaks then shouted that he was the "police" and that LEO needed to speak with MANKINS.  MANKINS replied, "If you come any closer I'll shoot you." and kept walking.

c.   Still in foot pursuit, LEO Oaks created distance and drew his handgun.  LEO Oaks then asked MANKINS if he had a weapon.  MANKINS stated that he was only "joking" and that he did not have a weapon.  However, MANKINS, who now appeared to be trespassing in the fire camp, continued to walk away from LEO Oaks.

d.   Because LEO Oaks did not see a weapon, he put away his weapon and contacted United States Fish and Wildlife Service Law Enforcement Officer John Tarver for backup.

e.   After radioing for backup, LEO Oaks continued to pursue MANKINS.  MANKINS crossed the yellow caution tape along the base camp perimeter.  Attempting to apprehend MANKINS for trespassing and threatening LEO Oaks, LEO Oaks pursued MANKINS outside of the fire parameter onto a public street, which was outside the designated federal property.

f.   As LEO Oaks approached, MANKINS threatened that if LEO Oaks touched him, "I will hit you."   LEO Oaks then grabbed MANKINS' arm in an attempt to detain him for trespassing and threatening an officer.  MANKINS swung around and struck LEO Oaks twice in the face, once with a closed fist to his right jaw.  LEO Oaks managed to break away from MANKINS and MANKINS continued walking away.

g.   As MANKINS was walking away, LEO Oaks deployed a Electronic Control Device, also called a "taser" ("ECD") at MANKINS, causing MANKINS to lock up and fall to the ground in the prone position.  As LEO Oaks gave MANKINS commands to stay on the ground and put his arms out on the ground with palms up, MANKINS nonetheless attempted to get back to his feet.  While giving commands to stay down on the ground, LEO Oaks activated his ECD a second time.  After the second ECD deployment, MANKINS complied with the commands and stayed to the ground, eventually placing his arms out with palms up after numerous commands.

h.   After being subdued, MANKINS identified himself, and provided LEO Oaks with identification in the name of JAKE MANKINS.

i.   At approximately 11:55 p.m., approximately 10 minutes after LEO Oaks initially made contact with MANKINS, Officer Tarver arrived on scene to provide assistance. Officer Tarver and LEO Oaks placed MANKINS away from the road and into a seated position after conducting a pat down search for weapons.  MANKINS became very apologetic and made spontaneous statements pleading to be let go.

j.   MANKINS spontaneously admitted that he knew he did not belong in the park and did not comply with LEO Oaks orders because LEO Oaks was "just a Park Ranger" and "did

not have the authority to arrest him." MANKINS also

admitted that he was stupid for hitting LEO Oaks. MANKINS

expressed remorse and concern for LEO Oaks. MANKINS also

admitted that it was stupid to have threatened LEO Oaks

with a gun.

k.   Officer Cockrum, also an Emergency Medical

Technician, conducted a basic medical assessment on LEO

Oaks. LEO Oaks refused medical attention. LEO Oaks stated

that his jaw felt tender and sore upon movement, but he

could move it. There was no obvious swelling, reddening or

abrasions visible. Officer Tarver later saw LEO Oaks

rubbing his jaw through the rest of their shift.

6.   On August 22, 2009, LEO John Tarver of the United

States Fish and Wildlife Service provided the following

written statement of the events surrounding the assault of

LEO Oaks:

a.   On August 21, 2009 at approximately 11:55

p.m., United States Fish and Wildlife Service LEO John

Tarver was on patrol, wearing the National Wildlife Refuge

Law Enforcement Uniform, at Preisker Park in Santa Maria,

California. LEO Tarver received a message that LEO Oaks

was in need of assistance. Tarver went to LEO Oaks'

location and observed LEO Oaks standing over one subject,

later identified in paragraph 5(g) as JAKE MANKINS, who was in a prone position on the sidewalk along Preisker Lane.

b.   At this time MANKINS began to spontaneously apologize and ask to be released.  LEO Oaks told MANKINS that he would not be released.  MANKINS began to spontaneously beg to be released and LEO Oaks advised him that due to the level of force that had been used that it would not be possible for the officers to release him. MANKINS said that he was sorry for going into the park and that he knew that park was closed and he should not have been there and asked to be given a break.  LEO Oaks advised MANKINS that he had threatened a Federal Law Enforcement Officer with deadly force and hit the same officer two times and that he would not be released.  MANKINS then said that he did not have a gun when he had threatened to shoot LEO Oaks and MANKINS was scared when LEO Oaks touched him so he hit him to get away.  MANKINS again said that he was sorry and asked to be let go.  LEO Oaks responded that we could not release him.  LEO Oaks told MANKINS that if he had stopped and talked to him when asked, that none of this would have happened.  MANKINS replied that he thought LEO Oaks was just a Park Ranger and that he did not have the authority to arrest him so he just blew LEO Oaks off.

c.   Santa Maria Police Officers later read MANKINS his Miranda rights, to which he waived.   MANKINS told them that he was cutting across the park to save time when Officer Oaks approached him and asked him to stop and he did not because he thought that Officer Oaks did not have the authority to arrest him.   MANKINS then told the Santa Maria Police Officers that he had threatened to shoot Officer Oaks because he was scared and that when Officer Oaks touched him he did not hit him, but may have pushed him.

**CONCLUSION**

7.   Based upon all the forgoing facts, I believe there is probable cause to believe that Jake MANKINS did violate Title 18, United States Code, Section 111.   I respectfully request that an Arrest Warrant be issued for Jake MANKIN.

_____
DANIEL F. BRIOT
Special Agent - USDA Forest Service


_____
FERNANDO M. OLGUIN
UNITED STATES MAGISTRATE JUDGE
Sworn and subscribed to before me on this 24 day of August 2009.